IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-00123-01-CR-W-GAF |
| | ) | |
| MICHAEL B. LOWRY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Michael Lowry's Motion to Suppress Evidence. (Doc. No. 25). The Government has filed suggestions in opposition to Defendant's motion (Doc. No. 26) and Defendant filed a reply (Doc. No. 27).

An evidentiary hearing on Defendant's motion was held. (Doc. No. 33). During the hearing, the Government called Independence, Missouri Police Department Officer Joseph Hand as a witness. The following exhibits were offered and admitted into evidence:

       Government's Exhibit 1:    Aerial map of bus stop at US 40 Highway and I-70 and surrounding area, Independence, Missouri;
       Government's Exhibit 2:    Aerial map of bus stop at US 40 Highway and I-70, Independence, Missouri; and
       Government's Exhibit 3:    Dash cam video.

**I.    FACTS**

Joseph Hand is a patrol officer with the Independence, Missouri Police Department (Tr. at 4-5). He has been with the Independence, Missouri Police Department for approximately five years (Tr. at 5). On January 28, 2017, Officer Hand was working overnight patrol in District 21; he had a Lenexa, Kansas police officer riding along with him (Tr. at 6-7, 21).

The Independence, Missouri Police Department had issued a department-wide directive to proactively patrol the bus stop at 40 Highway and I-70 (Tr. at 6-7, 37-38, 61). This bus stop was in a high crime area, known for a lot of disturbances, fights, narcotic sales, stolen cars, violent crimes and issues with drinking (Tr. at 7, 37, 50, 61). In addition to this directive, Officer

Hand had also been asked by his sergent and supervisors to proactively patrol the area (Tr. at 61). As a result, Officer Hand typically visited the bus stop five or six times a night when patrolling District 21 (Tr. at 7).

On the evening of January 28, 2017, the weather was cold, windy and misty (Tr. at 7). At approximately 9:13 p.m., Officer Hand conducted a proactive patrol of the bus stop (Tr. at 10, 38-39, 50). The bus stop at 40 Highway and I-70 has two separate shelters separated by approximately 25 yards (Tr. at 9, 36-37, 40; Gvt. Exh. 2). Highway 40 is located directly behind the shelters, separated from the shelters only by a grassy, median-like strip (Gvt. Exhs. 1, 2).

Officer Hand parked perpendicular to the shelter on the right (Tr. at 13; Gvt. Exh. 3). Defendant was in the left shelter wearing bulky clothing and a backpack; Officer Hand observed Defendant look in the direction of his police vehicle and immediately walk around to the back of the shelter obstructing Officer Hand's view of Defendant (Tr. at 13, 15, 16-17, 19, 42-43, 63). Officer Hand was not aware of Defendant's identity and did not know anything about him (Tr. at 39, 41, 49).

As Officer Hand exited his patrol vehicle he encountered Tyson Parks in the right shelter, an individual who he knew to be banned from the bus stop (Tr. at 10, 15). As Officer Hand contacted Mr. Parks, he observed Defendant continue to look in his direction and walk back to the front of the left shelter (Tr. at 17). Officer Hand looked in Defendant's direction and made eye contact with him; Defendant then walked behind the shelter a second time (Tr. at 18). Officer Hand shined his flashlight at Defendant and directed him to "Come here" (Tr. at 16, 18, 45; Gvt. Exh. 3 at 1:32). When Defendant asked why, Officer Hand responded "Because I said so" (Tr. at 45-46; Gvt. Exh. 3 at 1:37).

Officer Hand's common practice when dealing with a pedestrian is to approach them (Tr. at 58-59). In this instance, however, Officer Hand asked Defendant to come to him because he was dealing with both Defendant and Mr. Parks (Tr. at 20, 58-59). Officer Hand was also concerned with the safety of the officer riding with him as well as the surrounding public (Tr. at 59).

Defendant's behavior caused Officer Hand to believe that Defendant was trying to avoid contact with him; Officer Hand also thought Defendant might be involved in criminal activity, drugs or alcohol (Tr. at 18, 47). He believed Defendant may have been trying to throw or conceal drugs or a weapon behind the shelter (Tr. at 18-19, 64). Officer Hand was not close

2

enough to smell drugs or alcohol on Defendant and did not see Defendant discard anything to the ground, stagger, lose his balance or act belligerent (Tr. at 47, 52-53). He did not observe Defendant with alcohol or narcotics or see Defendant engage in any type of transaction (Tr. at 50, 52-53). Officer Hand testified, though, that he had previously encountered individuals engaging in similar actions to that of Defendant who he later discovered to be committing a crime (Tr. at 60).

As Defendant arrived at the right shelter, Officer Hand asked Defendant for his identification and birth date (Tr. at 20). A computer check revealed Defendant had an outstanding felony warrant and was known to be physically violent (Tr. at 24-25). Officer Hand tried to place Defendant in handcuffs, but Defendant refused to place his hands behind his back (Tr. at 27). This concerned Officer Hand, as he did not know if Defendant was going to try to flee, fight or if he had anything illegal on him (Tr. at 27). Defendant told Officer Hand that he had a gun; a search of Defendant revealed a loaded firearm in his waistband (Tr. at 65; Gvt. Exh. 3 at 6:38). Defendant stated, "I didn't know I was being held." (Tr. at 27; Gvt. Exh. 3 at 7:03). He then told Officer Hand he had a clip in his back pocket and a collapsible baton in his bag (Tr. at 27; Gvt. Exh. 3 at 8:12). Once Defendant told Officer Hand he was a convicted felon and that he had a gun on his person, Officer Hand placed Defendant under arrest (Tr. at 28).

## II.  ANALYSIS

Defendant seeks suppression of evidence obtained as a result of his January 28, 2017 arrest on grounds of a Fourth Amendment violation. He specifically argues that law enforcement lacked reasonable suspicion to stop and detain him. This argument is not supported by the evidence.

The Fourth Amendment prohibits unreasonable searches and seizures. Law enforcement "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." United States v. Fields, 832 F.3d 834 (8th Cir. 2016)(quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). "The existence of reasonable articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences from relevant training and experience." Id. (quoting United States v. Horton, 611 F.3d 936, 940 (8th Cir 2010)). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a

3

preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). "The behavior on which reasonable suspicion is grounded . . . need not . . . eliminate innocent interpretations of the circumstances." United States v. Carpenter, 462 F.3d 198, (8th Cir. 2006). "Thus, factors that individually may be consistent with innocent behavior, when taken together, can give rise to reasonable suspicion, even though some persons exhibiting those factors will be innocent." United States v. Stewart, 631 F.3d 453, 457 (8th Cir. 2011)(citing Carpenter, 462, F.3d at 986; Arvizu, 534 U.S. at 277). See also United States v. Sokolow, 490 U.S. 1, 9 (1989); Terry v. Ohio, 392 U.S. 1, 22 (1968). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." United States v. Quinn, 812 F.3d 694, 697-98 (8th Cir. 2016)(quoting United States v. Dawdy, 46 F.3d 1427, 1429 (8th Cir. 1995)). Law enforcement "need not be able to identify the specific crime the officer is investigating; rather the officer need only reasonably suspect that the individual is engaged in some kind of criminal activity." United States v. Fields, No. 14-00017-01-CR-W-HFS, 2014 WL 5147610 at *4 (W.D. Mo. Sept. 10, 2014)(quoting United States v. Noonan, No. 12-CR-1016-LFF, 2013 WL 500828 at *4 (N.D. Iowa Feb. 11, 2013)). See also Fields, 832 F.3d at 834 ("The government must prove that the officer had reasonable suspicion that criminal activity was afoot, not that the subject of the stop was actively engaged in a crime.").

In this case, the totality of the circumstances provided law enforcement with the requisite reasonable suspicion to investigate. Upon first observing Officer Hand's patrol vehicle, Defendant immediately walked around to the back of the left shelter toward Highway 40. Defendant continued to look in Officer Hand's direction and returned to the interior of the left shelter. When Officer Hand made eye contact with Defendant, Defendant again walked behind the left shelter. Defendant maintains that the act of walking away is consistent with innocent behavior. However, this case is different than one in which an individual merely walks away from a law enforcement officer in a high crime area. Here, Defendant did it twice -- all while keeping his eye on Officer Hand.

To be sure, it is not the isolated act of Defendant walking behind the shelter that constituted reasonable suspicion; it was the context in which Defendant did so. Defendant immediately left the protection of the shelter on a windy and misty night and walked behind the shelter to a grassy area when he became aware of Officer Hand's presence. Defendant watched

4

Officer Hand as he returned to the shelter and, upon making eye contact with Officer Hand, walked behind the shelter a second time. These actions caused Officer Hand to believe Defendant was trying to avoid police contact. Moreover, the bus stop at 40 Highway and I-70 was known for criminal activity. Defendant was wearing bulking clothing and a backpack. Each time Defendant was behind the shelter, Officer Hand's view of Defendant was obstructed and Officer Hand thought Defendant may have been trying to discard or conceal drugs or a weapon. Officer Hand testified he had previously encountered individuals engaging in similar behavior who were later determined to be committing a crime. Defendant's Fourth Amendment rights were not violated by this stop and subsequent arrest.

### III. CONCLUSION

For the reasons stated above, it is hereby

RECOMMENDED that Defendant Lowry's Motion to Suppress Evidence be denied.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 1st day of February, 2018, at Kansas City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge